RECEIVED
MAR 1 5 2010
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| DRILL CUTTINGS DISPOSAL COMPANY, L.L.C. | CIVIL ACTION NO. 08-1837 |
| VERSUS | JUDGE DOHERTY |
| KEM-TRON TECHNOLOGIES, INC. | MAGISTRATE JUDGE HILL |

### MEMORANDUM RULING

Pending before the Court is a Motion for Summary Judgment [Doc. 15] filed by plaintiff Drill Cuttings Disposal Company, L.L.C. ("DCDC") requesting "that this Court grant summary judgment in its favor and against Defendant, Kem-Tron Technologies, Inc. ("Kem-Tron"), as there exist no issues of material fact in connection with Kem-Tron's liability to DCDC." Specifically, DCDC alleges pursuant to a contract between DCDC and Kem-Tron, Kem-Tron is liable for its failure to pay past due invoices totaling $169,421.04 in connection with equipment, labor, and supplies rented by DCDC to Kem-Tron and for costs of damage to DCDC's equipment while in use by Kem-Tron in the amount of $42,568.58. DCDC contends as a result of Kem-Tron's failure to pay these past due amounts totaling $211,989.62 and despite amicable demand, DCDC has been forced to incur attorney's fees, costs, and expenses in pursuing these amounts. DCDC further alleges under the terms of the contract between the parties, Kem-Tron is liable to DCDC for all previously invoiced amounts, as well as a contractual late fee of 5% per month of each invoiced amount, plus legal interest on such amounts owed from the date of judicial demand until paid in full, attorney's fees in the amount of 25% of the amounts incurred, and costs and expenses in connection with the

pursuit of the matter.[1]

Plaintiff DCDC is a company engaged in the business of providing equipment, labor, parts, supplies and rentals for the disposal of drill cuttings in connection with offshore oil production. DCDC alleges on July 8, 2008, DCDC and Kem-Tron entered into an agreement ("the contract") whereby DCDC was to provide Kem-Tron with equipment, labor, parts, and rentals, including but not limited to a vertical centrifuge cuttings dryer, for use on rig sites located in Natchitoches Parish and Red River Parish and in connection with a job being performed by Kem-Tron for a company called EnCana. The instant lawsuit concerns certain provisions in the contract related to the billing arrangement between the parties.

The gist of plaintiff's claims is that the contract between the parties specifies that "[e]quipment rental and personnel charges are *shop to shop*,"[2] and the language in the contract stating the price to be charged "per day" indicates Kem-Tron was to be billed for *each day* it rented the equipment from DCDC, regardless of whether the equipment was actually being used by Kem-Tron's customer, EnCana. Additionally, DCDC contends Kem-Tron has not paid for the costs of certain damage to the equipment, which damage occurred while the equipment was being rented by Kem-Tron.

In response, Kem-Tron argues it has paid all properly incurred charges associated with the rental of the equipment in question and contends the following alleged facts suffice to demonstrate

---

[1] Defendant Kem-Tron filed a response to the motion [Doc. 29] and a supplemental response.

[2] In an Affidavit submitted on behalf of DCDC, Robert McDonald, former Regional Operations Manager for Kem-Tron, explains his understanding of "shop to shop" to mean Kem-Tron "was supposed to pay for the day rates charged by DCDC for that equipment from the date it was shipped out of DCDC's shop until the date that the equipment was returned to DCDC's shop by [Kem-Tron]." *See* Affidavit of Robert McDonald, ¶11, attached as Exhibit "B" to DCDC's motion for summary judgment [Doc. 15].

the existence of genuine issues of material fact as to whether the claimed amounts are, in fact, owed under the contract:

- Although the contract between the parties stipulates the equipment in question is to be rented for a specified price to be paid "per day," Kem-Tron submits the affidavits of two of its employees who attest they understood the term "per day" to mean the price to be billed would be based on the number of days the equipment was *actually used* by Kem-Tron's customer, EnCana, and not on the number of days the equipment was at the job site, regardless of whether the equipment was being used. Kem-Tron contends this understanding was based on assurances by DCDC's president, Jeffrey Reddoch, who stated in meetings and other discussions with Kem-Tron that DCDC would only bill Kem-Tron for days Kem-Tron was able to charge its customer, EnCana, for use of the equipment. Kem-Tron further alleges its understanding "is consistent with the manner in which equipment charges were handled in the oil and gas industry at this time," an allegation that appears to be undisputed by DCDC.

- Additionally, Kem-Tron argues Mr. Reddoch confirmed DCDC's intent in a July 25, 2008 email to Kem-Tron employee Robert McDonald, in which Mr. Reddoch stated "if there are any days [Kem-Tron] can't charge for, like rig moves, [DCDC] will credit on future invoices."

- Therefore, Kem-Tron contends the contract between the parties is ambiguous as to how the rentals would be charged, however, there is clear evidence the parties intended that Kem-Tron would only be billed for days EnCana actually used the equipment.

- Alternatively, Kem-Tron argues the contract contains a provision that "changes to prices or instructions must be agreed in writing." Kem-Tron argues if the Court determines the contract originally provided Kem-Tron would be charged for every day the equipment was on the job site, the agreement was modified in writing by Mr. Reddoch's July 25, 2008 email stating "if there are any days [Kem-Tron] can't charge for, like rig moves, [DCDC] will credit on future invoices." Kem-Tron argues it paid DCDC in full pursuant to the contract as modified by Mr. Reddoch's email.[3]

---

[3] Interestingly, Robert McDonald, who was the Regional Operations Manager for Kem-Tron at the time of the incident giving rise to this litigation but who is no longer employed by Kem-Tron, has filed an affidavit on behalf of *both* parties in this matter. On February 26, 2009, Mr. McDonald executed an affidavit wherein he attests his understanding that Kem-Tron was to be billed for each day it rented the equipment, on a "shop to shop" basis, and that he did not believe Mr. Reddoch's July 25, 2008 email altered that agreement of the parties. *See* February 26, 2009 Affidavit of Robert McDonald, attached as Exhibit "B" to plaintiff's motion for summary judgment [Doc. 15].

Thereafter, on December 30, 2009, Mr. McDonald executed an affidavit wherein he attests he understood

- With respect to the alleged damage to the equipment while in the custody of Kem-Tron, Kem-Tron cites the deposition testimony of Mr. Reddoch, who testified the alleged damage to the equipment occurred in mid-October 2008 and early December 2008. Kem-Tron argues it was no longer renting equipment from DCDC at taht time, but rather, DCDC was renting its equipment directly to EnCana. Therefore, Kem-Tron contends there is a genuine issue of material fact regarding whether Kem-Tron has any liability for the alleged damage to the equipment.[4]

Under Louisiana law,[5] a contract is ambiguous when the contract is "uncertain as to the

---

Mr. Reddoch's July 25, 2008 email "to mean that DCDC would only charge Kem-Tron for days that the rental equipment was being used, days that Kem-Tron was able to bill its client, EnCana, for use of the equipment." He goes on: "This statement is consistent with my understanding of the agreement related to the rental of equipment from DCDC.....*I always understood that Kem-Tron was renting equipment from DCDC and would be billed based on the number of days the equipment was used by our customer EnCana.*" See December 30, 2009 Affidavit of Robert McDonald, attached to defendant's opposition brief [Doc. 29] (emphasis added).

In the December 30, 2009 affidavit, Mr. McDonald states he received the February 26, 2009 affidavit from counsel for DCDC, who asked him to sign the affidavit. Stating he is not an attorney and is not "experienced with legal matters," Mr. McDonald states he signed the affidavit before he fully understood its contents. He further states the December 30, 2009 affidavit supersedes and replaces the February 26, 2009 affidavit" and "fully reflects [his] understanding of the agreement between DCDC and Kem-Tron with regard to the EnCana project." A poor practice, at the very least, on behalf of Mr. McDonald, as well as "DCDC" counsel.

[4] Additionally, Kem-Tron argues DCDC has not substantiated its claim for damage to the equipment other than the provision of invoices for same. Kem-Tron contends it was not aware of any damage to the equipment it rented from DCDC.

[5] Although movant does not address the issue of what law governs the contract at issue, respondent Kem-Tron analyzes the issues before the Court under Louisiana law.

This action was filed in the 15th Judicial District Court for the Parish of Vermilion, Louisiana, and was timely removed by Kem-Tron to this Court on the basis of federal diversity jurisdiction. *See* 28 U.S.C. §1332. Accordingly, this Court is bound to apply the substantive law, including the conflict-of-law rules, of the forum state Louisiana. *American Elec. Power Co. Inc. v. Affiliated FM Ins. Co.*, 556 F.3d 282, 286 n.2 (5th Cir. 2009), *citing Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under the Louisiana choice-of-law regime, the law of the state where the contract was issued and executed generally governs the interpretation of that contract. *Woodfield v. Bowman,* 193 F.3d 354, 360 (5th Cir.1999). Here, the contract between the parties was prepared and executed by DCDC in Louisiana and thereafter mailed to Kem-Tron at its offices in Stafford, Texas, where it was accepted and executed by an employee of Kem-Tron. Therefore, the contract arguably was executed in two states: Louisiana and Texas.

However, neither party has identified a conflict between the relevant law of Texas and Louisiana (in fact, no party has argued Texas law applies). Indeed, this Court's own research shows under Texas law, as under Louisiana law, if a contract is ambiguous, summary judgment is improper because interpretation of the agreement is a fact question for the jury. *U.S. Quest Ltd. v. Kimmons,* 228 F.3d 399, 404 (5th Cir. 2000), *citing Childers v. Pumping Systems, Inc.,* 968 F.2d 565, 569 (5th Cir. 1992). When there is no conflict, no conflict-of-law analysis is necessary, and the forum law applies. *American Elec. Power Co. Inc.*, 556 F.3d at 286 n.2, *citing Mumblow v. Monroe Broadcasting, Inc.,* 401 F.3d 616, 620 (5th Cir.2005). Thus, this Court applies the forum law of Louisiana in

parties' intentions and susceptible to more than one reasonable meaning under the circumstances and after applying established rules of construction." *Shocklee v. Massachusetts Mut. Life Ins. Co.*, 369 F.3d 437, 440 (5th Cir. 2004), *citing In re Liljeberg Enterprises, Inc.*, 304 F.3d 410, 440 (5th Cir.2000) (internal quotation marks and citations omitted). When a contract is ambiguous, "the agreement shall be construed according to the intent of the parties." *Guidry v. American Public Life Ins. Co.*, 512 F.3d 177, 181 (5th Cir. 2007), *citing Kuswa & Assocs., Inc. v. Thibaut Constr. Co.*, 463 So.2d 1264, 1266 (La.1985). "Intent is an *issue of fact* which is to be inferred from all of the surrounding circumstances." *Guidry*, 512 F.3d at 181, *citing Kuswa & Assoc.*, 463 So. 2d at 1266 (emphasis added); *see also Liberty Mut. Ins. Co. v. Pine Bluff Sand & Gravel Co.*, 89 F.3d 243, 246 (5th Cir.1996) ("[A]mbiguity in the terms of a contract gives rise to a fact question concerning the intent of the parties."). Therefore, the Fifth Circuit has held "when a contract is ambiguous, the trier of fact must resolve the factual issue of intent, and judgment on the pleadings or summary judgment is improper." *Guidry*, 512 F.3d at 181, *citing Investors Syndicate of Am., Inc. v. City of Indian Rocks Beach*, 434 F.2d 871, 877-78 (5th Cir.1970) (finding that dismissal on the pleadings was error when the contract at issue was ambiguous); *Gertler v. City of New Orleans*, 881 So.2d 792, 796 (La.Ct.App.2004) ("If the language of [a contract] is ambiguous or susceptible to multiple interpretations, the intent of the parties must be determined and summary judgment is inappropriate.").[6]

---

addressing the issues before the Court. However, this Court notes the outcome would remain the same under an application of Texas law.

[6] In *Guidry*, the Fifth Circuit noted "[g]ranting summary judgment on an ambiguous contract may be appropriate only in the very rare circumstance where 'there is no issue of material fact concerning the pertinent intent' of the parties." 512 F.3d at 181 n.5, citing *Sanders v. Ashland Oil, Inc.*, 696 So.2d 1031, 1035 (La. App. 1st Cir. 1997). In the instant case, this Court concludes there are issues of material fact regarding the intent of the parties.

In the instant case, this Court finds the language "per day" in the contract is ambiguous. On the one hand, "per day" could reasonably mean Kem-Tron was to be billed for every day that the equipment in question was at Kem-Tron's job site. On the other hand, "per day" could reasonably mean Kem-Tron was to be billed only for days in which its customer, EnCana, actually used the equipment. Kem-Tron argues this arrangement was customary in the oil and gas industry at the time of the events in this lawsuit, and DCDC has not challenged that assertion. At the very least, this Court concludes the July 25, 2008 email from DCDC's Jeffrey Reddoch to Kem-Tron's Robert McDonald, wherein Mr. Reddoch stated "if there are any days [Kem-Tron] can't charge for, like rig moves, [DCDC] will credit on future invoices," creates a genuine issue of material fact as to the intent of the parties regarding the billing arrangement. Additionally, this Court concludes there are genuine issues of material fact regarding whether Kem-Tron is liable for damage to the equipment when such damage appears to have been incurred during a time period after which Kem-Tron was no longer renting the equipment in question.

Therefore, considering the burden of production associated with summary judgment motions, the legal presumptions which attach to evidence produced by a non-movant, and the prohibition against weighing evidence in this context, this Court concludes there are genuine issues of material fact regarding whether DCDC is entitled to judgment as a matter of law on its claims against Kem-Tron. Accordingly, IT IS ORDERED that DCDC's Motion for Summary Judgment [Doc. 15] is DENIED.

THUS DONE AND SIGNED in Lafayette, Louisiana, this 15 day of March, 2010.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

-6-